# ANICKER *v.* GUNSBURG ET AL., ADMINISTRATORS OF GUNSBURG, ET AL.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 164.   Argued January 28, 1918.—Decided March 4, 1918.

An oil and gas lease of the restricted land of a Creek full-blood is not valid without approval by the Secretary of the Interior. Act of May 27, 1908, § 2, c. 199, 35 Stat. 312.

When there are two such leases in conflict, one of which has been approved by the Secretary, the unsuccessful claimant, to charge his adversary as trustee, must show that, as matter of law, the Secretary erred both in approving the one lease and in refusing to approve the other.

And the facts that the plaintiff's lease was the first filed with the Union Agency, at Muskogee, and that it was recorded with the county register of deeds whereas defendant's was not; and any constructive notice coming from such filings and recordations under the Acts of March 1, 1907, c. 2285, 34 Stat. 1026, and April 26, 1906, c. 1876, 34 Stat. 145, and Arkansas statutes in force in the Indian Territory; and the effect of a rule of the Secretary of the Interior providing for the filing of leases within thirty days of execution—are all matters beside the case, where it does not appear affirmatively that the Secretary would have approved the plaintiff's lease if he had refused approval of the defendant's.

While the law does not vest arbitrary power in the Secretary, his approval of such leases rests in the exercise of his discretion; he may consider the advantages and disadvantages to the Indian and grant or withhold approval as his judgment may dictate—the courts may interfere to protect the rights of others only when they are invaded by clearly unauthorized action.

Action of the Secretary within his discretionary power is not vitiated by the fact that the reasons assigned in his discussion of the case when before him were not wholly sound.

226 Fed. Rep. 176, affirmed.

THE case is stated in the opinion.

*Mr. Frank Hagerman,* with whom *Mr. James W. Zevely, Mr. Richard W. Stoutz, Mr. James M. Givens, Mr. Jacob B. Furry* and *Mr. Edward C. Motter* were on the briefs, for appellant:

The law required the leases to plaintiff and defendants to be filed, recorded and approved by the Secretary of the Interior. When this was done, the instrument related back to the time of its execution.

Plaintiff's lease was executed March 28, 1912, filed with the Indian Commissioner on March 30, 1912, and recorded April 1, 1912. Defendants' lease, though executed March 20, 1912, was never filed till April 5, 1912, and was never at any time recorded.

The Department erroneously construed its Rule 2 to permit defendants to have full thirty days within which to file their unrecorded lease and, solely because filed within that time, to require its approval as against that of plaintiff. This construction was erroneous, for that the rule was at most a mere limitation upon the time within which the lessee, as between himself and the Government, should be required to ask for the approval of his lease. If within that time he failed to file, he, by his own act, thereby deprived himself of any right even to ask an approval. The effect of the failure to file or record is left to the provisions of the law. So construed, it answers a good purpose, is a lawful exercise of power and wholly consistent with the law. While the Act of May 27, 1908, 35 Stat. 312, provides for the approval by the Secretary "under rules and regulations" promulgated by him, this only means such as are reasonable and not in conflict or inconsistent with the law.

The Act of March 1, 1907, requiring the lease to be filed (34 Stat. 1026), simply made the filing constructive notice; for without notice, either actual or constructive, no subsequent *bona fide* purchaser could be affected. This statute fixed no time for the filing. It made that act,

whenever done, the equivalent of notice. If, however, time for that purpose were implied, as it should not be, it could only, at most, be a reasonable period. Thirty days' delay, as required by the original rule, was unreasonable. So it has been frequently decided under statutes requiring recording within a reasonable time.

Even if the rule be construed as postponing the time for filing, this in nowise extended the time for recording. There was no attempt below to deal with the necessity of recording. Yet the defendants' lease, if not recorded, was, under the law, not valid against the plaintiff. *Shulthis* v. v. *McDougal*, 170 Fed. Rep. 529; *Lomax* v. *Pickering*, 173 U. S. 26, 48. So, even if there was an excuse for the failure promptly to file the lease, which there was not, there was none for the neglect to record.

If, as here, the Secretary erred, as a matter of law, his act can be challenged by a bill of the character herein filed.

The Secretary rejected plaintiff's lease on the sole ground that a departmental rule gave defendants thirty days in which to file their lease, during which time plaintiff could acquire no interest. It is clear but for this construction of the law he would have received the lease which was awarded to defendants.

The Secretary here actually exercised his discretion by finding that both leases were in all respects satisfactory in form, properly secured and executed by proper lessees. Everything was decided which was necessary to a complete technical approval of each lease. The only reason for not calling it an actual approval of plaintiff's was the mistaken notion that the law gave defendants thirty days in which to file theirs, and during that period plaintiff was, as against them, incapacitated from acquiring any right. The effect of his finding was to approve plaintiff's lease. There can be an approval in an informal way, even a writing not always being necessary. *U. S. Bank* v. *Dandridge*, 12 Wheat. 64, 90.

The sole purpose of the approval was to protect the Indian against improvidence (*Shulthis* v. *McDougal, supra; Pickering* v. *Lomax,* 145 U. S. 310, 316; *Moore* v. *Sawyer,* 167 Fed. Rep. 826, 834), not to decide legal rights between conflicting claimants. Therefore, the question really is, whether the Department practically approved plaintiff's ·lease to the extent necessary to "protect the Indian against the improvident disposition of his property." A question of priority arose solely as between the respective lessees. This the Secretary assumed to decide. He then decided it erroneously.

Plaintiff was an innocent purchaser. But, whether he was or not, his rights, as such, and as against another lessee, could not be determined by the Secretary.

*Mr. George S. Ramsey,* with whom *Mr. John M. Chick, Mr. Edgar A. de Meules, Mr. Malcolm E. Rosser, Mr. Villard Martin* and *Mr. J. Berry King* were on the brief, for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

This is a contest between holders of oil and gas leases made by one Eastman Richard, a full-blood Creek Indian, the owner by patent of the west half of the northeast quarter of section 5 of township 17 N. range 7 E., in Creek County, Oklahoma. Richard made a lease of the west one-half of the quarter to David Gunsburg and the South-western Petroleum Company on March 20, 1912. This lease was not filed for record with the Indian Agency until April 5, 1912, nor was it recorded with the Register of Deeds for Creek County, Oklahoma. On March 28 1912, Richard made a like lease for the same premises to the appellant, William J. Anicker, which was filed with the Indian Agency on March 30, 1912, and on April 1, 1912, was filed for record with the Register of

Deeds for Creek County, Oklahoma.   It thus appears that the lease to Gunsburg and the Southwestern Petroleum Company was earlier than the one to Anicker but the latter was first recorded.   Upon hearing upon these conflicting leases the United States Indian Superintendent recommended the approval of the Gunsburg and Southwestern Petroleum Company lease.

After referring to the dates of the leases and the time of filing the same for record, the superintendent said:

"The Department has uniformly held in such cases that where a lease is filed, with the papers necessary for completion of same, within thirty days, that the date of execution is the date from which the priority of the lease is determined.

"To my mind this is the only reasonable construction of the regulations, so long as thirty days or any other period is allowed within which to file a lease.   But it is contended on behalf of Mr. Anicker that the lease to Gunsburg and the Southwestern Petroleum Company was obtained by fraud.   To this contention I cannot agree for the reason that this lease and the lease to Messrs. Funk & Riter were presented to this office on the date of execution, fully explained by Mr. William Kremer, Asst. Chief Clerk, a notary in this office, and acknowledged by the lessor.   This contention the attorneys for Mr. Anicker were unable to support in their cross-examination of Eastman Richard, although it was apparent at that time that the lessor did not remember the names of the lessees. He was, however, confident that he had leased his entire allotment at that time, and it appears from Mr. Kremer's testimony, May 14, 1912, page 23, that the lease was fully explained to the lessor, as is done in all cases where leases are acknowledged before a notary in the employ of this office, and considering the numerous declarations and affidavits submitted bearing the lessor's signature in connection with this case, showing a change of attitude

upon every occasion approached in connection with these leases, and his lack of business ability, I am not inclined to entertain any doubt as to the fact that the lease was fully explained to him upon the date of execution thereof, notwithstanding his uncertainty at the hearing on May 13th and 14th as to the name of the lessee.

"It is further contended, in behalf of Mr. Anicker, that he should be considered prior lessee for the reason that his lease was made prior to the time the lease of Gunsburg and the Southwestern Petroleum Company was filed at the Union Agency or elsewhere, and that the same was not only filed in the county wherein the land is situate, but also filed at Union Agency at a date prior to the date upon which the lease to Gunsburg and the Southwestern Petroleum Company was received.

"It is also contended that he had no actual notice, and an attempt has been made to show that the lessor had conveyed the idea to Mr. Anicker or his agent that the only lease he had executed when approached by Mr. Anicker, was the lease in favor of the Eastern Oil Company. It will be noted in the testimony that an unsuccessful effort was made to secure an admission from Eastman Richard that would corroborate this contention.

"For the purposes of this case I do not consider it necessary to determine at this time whether or not the evidence at hand shows that such representations were made by the lessor; even admitting that the lessee was misled by the lessor, the regulations which provide thirty days within which a lease may be filed, if binding upon parties interested in securing leases, should be considered as heretofore, as giving that lease priority which bears the prior date of execution and is filed with the papers required, within the 30-day period.

"An examination of the lease to David Gunsburg and the Southwestern Petroleum Company discloses the fact that this lease was filed within thirty days, in accordance

with the regulations, and that the same was executed prior to the lease in favor of Mr. Anicker. Concerning the contention of Mr. Anicker that the date of filing should be regarded as the date of priority, which carries with it the contention that the regulations of the Secretary of the Interior allowing thirty days within which to file a lease is not within the power conferred on the Secretary of the Interior, under the law, which provides in part (Section 2, Act of Congress of May 27, 1908 [35 Stat. L. 312]): 'That leases of restricted lands for oil and gas mining purposes  .  .  .  may be made with the approval of the Secretary of the Interior under rules and regulations provided by the Secretary of the Interior and not otherwise.'"

After upholding the right of the Secretary of the Interior to make rules and regulations the superintendent further said:

"The Secretary clearly having the right to fix a reasonable period within which time lessees may and must file their leases for approval, it follows that if such a regulation is made all lessees must receive the same treatment, both as to the benefits or privileges of taking the time allowed, or on the contrary the penalty, if they fail to comply with the regulation.  If this policy was not followed, the rule might as well be abolished, but this would lead to many opportunities of double dealing on behalf of both lessees and lessors.  It being almost a physical impossibility to execute, complete the papers and file leases simultaneously, a reasonable time must be given.  The thirty-day rule has been in effect since the early days of oil lease development in the Five Tribes and persons taking leases almost universally understand that the date of the lease, if filed within the thirty-day period, governs, instead of the date of filing."

*    *    *    *    *    *    *    *

"The lease of Mr. Anicker must also be disapproved

not because he was in any way delinquent himself, but because of the prior lease of David Gunsburg and the Southwestern Petroleum Company filed with all papers required within even a shorter period than that allowed by the Department."

The superintendent concluded that the lease in favor of Anicker should be disapproved, and the lease to Gunsburg and Southwestern Petroleum Company should be approved.

Upon hearing before the First Assistant Secretary of the Interior, that officer reached a like conclusion. A motion to reconsider was denied, the Secretary concluding:

"If there were any advantage in the prior filing of a lease which was entered into and executed after another lease, both having been filed at the agency within the time required by regulation, Anicker would have that advantage. The Act of March 1, 1907 (34 Stat. 1026), makes the filing at Union Agency legal notice. Anicker's lease is stamped as filed at the Agency March 30, 1912. Until approved by the Secretary, it was not a completed instrument and the fact of its having been recorded in a county office can not estop the Secretary from finding that another lease regularly executed and filed is more for the allottee's interest and better entitled to approval."

The plaintiff's bill was filed upon the theory that the lease to Gunsburg and Southwestern Petroleum Company had been approved by the Secretary by mistake of law, and that, but for the mistake, the lease of plaintiff would have been approved, and the bill sought to charge the defendants as trustees for the plaintiff, and to require an assignment of the lease to him. The District Court held against complainant, and that decree was affirmed by the Circuit Court of Appeals. 226 Fed. Rep. 176.

In order to maintain a suit of this sort the complainant must establish not only that the action of the Secretary

was wrong in approving the other lease, but that the complainant was himself entitled to an approval of his lease, and that it was refused to him because of an erroneous ruling of law by the Secretary. *Bohall* v. *Dilla*, 114 U. S. 47.

The statutes of the United States provide:

Section 20 of the Act of April 26, 1906, 34 Stat. 145: "All leases and rental contracts, except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole tribes shall be in writing and subject to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval: . . . *Provided further*, That all leases entered into for a period of more than one year shall be recorded in conformity to the law applicable to recording instruments now in force in said Indian Territory."

Section 2 of the Act of May 27, 1908, 35 Stat. 312: "That leases of restricted lands for oil, gas or other mining purposes, . . . may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise. . . ."

The Act of March 1, 1907, 34 Stat. 1026: "The filing heretofore or hereafter of any lease in the office of the United States Indian agent, Union Agency, Muskogee, Indian Territory, shall be deemed constructive notice."

Under the authority to make rules the Secretary of the Interior provided:

"All leases shall be in quadruplicate, and, with the papers required, shall be filed within thirty days from and after the date of execution by the lessor with the United States Indian Agent at Union Agency, Muskogee, Oklahoma."

Whatever may be the effect of this rule providing for

the filing of leases within thirty days from and after their execution, in view of the requirements of the statutes, the lease can have no validity without the Secretary's approval. The protection of the Indian's rights is left to the Indian Bureau of which the Secretary is the head, and the courts may only interfere to protect the rights of others when they are invaded by clearly unauthorized action.

Much stress is placed in argument upon the provisions of § 20 of the Act of April 26, 1906, requiring leases entered into for a period of more than one year to be recorded in conformity with the law requiring the recording of conveyances in force in the Territory; and upon the Act of March 1, 1907, providing that the filing of the lease in the office of the Indian Agency shall be deemed constructive notice. An elaborate argument is based on these requirements, and the statutes of Arkansas in force in the Territory are set out in the brief, which, it is contended, show the necessity of recording such instruments in order to give constructive notice to persons dealing with the title. But these requirements do not relieve the appellant of the primary difficulty of maintaining this suit; the lack of a showing that his lease would have been approved but for a mistake of law which resulted in the approval of the lease to another.

The statute is plain in its provisions—that no lease, of the character here in question, can be valid without the approval of the Secretary. Such approval rests in the exercise of his discretion; unquestionably this authority was given to him for the protection of Indians against their own improvidence and the designs of those who would obtain their property for inadequate compensation. It is also true that the law does not vest arbitrary authority in the Secretary of the Interior. But it does give him power to consider the advantages and disadvantages of the lease presented for his action, and to grant or withhold approval as his judgment may dictate.

There is nothing in this record to show that approval of the appellant's lease has been given by the Secretary as required by the statute. On the contrary, it appears that the Secretary approved another lease of the same land, and has withheld his approval of the one under which the appellant claims. The Secretary declares in substance in the finding which we have quoted, being his final action in the case, that the prior recording of one lease does not abridge his authority to find that another lease, regularly executed and filed, is more to the allottee's interest and better entitled to approval. It does not appear that had he disapproved the Gunsburg lease, he would have approved the one to appellant, and, until this affirmatively appears, appellant has no standing which permits a court by its decree to award the leasehold to him.

We find nothing in this record to indicate that the Secretary of the Interior has exceeded the authority which the law vests in him. The fact that he has given reasons in the discussion of the case, which might not in all respects meet with approval, does not deprive him of authority to exercise the discretionary power with which by statute he is invested. *United States ex. rel. West* v. *Hitchcock,* 205 U. S. 80, 85, 86.

It follows that the decree of the United States Circuit Court of Appeals must be

*Affirmed.*