### WITBECK v. HARDEMAN.
#### No. 5258.

Circuit Court of Appeals, Fifth Circuit.
July 17, 1931.

Concurring Opinion July 20, 1931.
Rehearing Denied Aug. 12, 1931.

S. L. Herold, of Shreveport, La. (Thigpen, Herold & Cousin, of Shreveport, La., on the brief), for appellant.

J. M. Grimmet, of Shreveport, La. (Yandell Boatner, J. M. Grimmet, Frank J. Looney, and Pugh, Grimmet & Boatner, all of Shreveport, La., on the brief), for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Witbeck and Hardeman each desired to prospect for gas and oil under section 13 of the Leasing Act of February 25, 1920, 30 USCA § 221, upon a certain quarter section of land in Louisiana belonging to the United States; both being qualified under the act to do so. Witbeck made oath to his application for a permit on November 9, 1923, and mailed it with the required fees. It was marked "Received" at the land office at 3:30 p. m., November 12, 1923. Hardeman went on the land on Sunday, November 11, 1923, and made a monument and posted a notice thereon, as mentioned in section 221, to obtain a preferential right to a permit for thirty days, and on December 11, 1923, his unsworn application for a permit was received by mail at the land office, but without the fees which were required by the regulations of the Department. A contest between the two applications was had in the Land Department upon issues of law and fact, with appeals and rehearings, resulting finally in a revision of the matter by the Secretary of the Interior, who awarded the permit to Witbeck. Before the permit issued, Hardeman brought his bill in the Supreme Court of the District of Columbia against the Secretary and Witbeck, seeking to enjoin the issuance of the permit to Witbeck, and to judicially establish his own prior right thereto. Witbeck was not served, and the bill was dismissed "for want of jurisdiction." Afterwards, on May 6, 1925, Witbeck got his permit, and gave the bond required of him. Hardeman brought the present bill in equity against Witbeck alone, asserting that he, and not Witbeck, was entitled to the permit, and that Witbeck had been awarded it in consequence of an error of law on the part of the Secretary of the Interior, and praying a decree that he is the equitable owner of the permit, and that Witbeck is only a trustee for him, and that Witbeck assign the permit to Hardeman. Witbeck moved to dismiss the bill for want of equity, and also because it concerns property the title to which is still in the United States, and because the United States are an indispensable party and cannot be brought in without their consent. The first motion was overruled, and the second and third reserved for consideration on the merits. After trial, they were impliedly overruled, for a decree was granted Hardeman in all respects as prayed for. Witbeck appeals. The permit has been kept in life by an extension pending the litigation.

Witbeck's first assignments of error are upon the overruling of his motions to dismiss. It is first contended that the bill lacks equity because the grant of a permit to any one is discretionary, so that no one can complain at not getting it. The language of the statute, 30 USCA § 221, is: "The Secretary of the Interior is *authorized,* under such necessary and proper *rules and regulations* as he may prescribe, to grant to any applicant qualified * * * a prospecting permit." Regulation 2, 47 Land Decisions 437, declares: "It should be understood that under the Act the granting of a prospecting permit for oil and gas is discretionary with the Secretary of the Interior, and any application may be granted or denied either in part or entirely as the facts may be deemed to warrant." If the grant be wholly discretionary, the preferring of a competitor cannot be complained of, because the complainant can show no certain right in himself had the competitor been refused, notwithstanding the Secretary may have given bad reasons for his action. Anicker v. Gunsburg, 246 U. S. 110, 38 S. Ct. 228, 62 L. Ed. 603. But we think the language of section 221 in reference to the applicant who goes upon the land and erects the monument and posts the required notice that "he shall, during the period of thirty days following such marking and posting, be entitled to a preference right over others to a permit for the land so identified," cannot be so easily nullified. Regulation 5 recognizes this preference, and declares that priority in initiating the claims shall govern in case of conflict. The Secretary has discretion to decide whether particular land shall be withdrawn from exploitation, and may refuse all applications for permits to explore it. United States ex rel. McLennan v. Wilbur, Secretary, 283 U. S. 414, 51 S. Ct. 502, 75 L. Ed. 1148. But having decided

that the land shall be exploited, he must recognize the statutory preference in issuing the permit, there being no discretion to ignore this plain mandate of the law. Daniels v. Wagner, 237 U. S. 547, 35 S. Ct. 740, 59 L. Ed. 1102, L. R. A. 1916A, 1116, Ann. Cas. 1917A, 40.

■ It is next urged that Witbeck has nothing that he can assign, but has only a contract with respect to land belonging to the United States which cannot be remodeled by a court, even if it ought to be, without the presence of the United States as a party. The bill is framed after the likeness of those often entertained in reference to patents under the land laws prior to the Leasing Act here involved. Daniels v. Wagner, supra, is an example. In that case the question of the indispensability of the United States as a party was raised, but at page 567 of 237 U. S., 35 S. Ct. 740, was dismissed as too obviously without merit to deserve discussion. The reason is that in such cases the courts refuse to interfere until the Land Department has done its work and issued a final patent, thus ending the proprietary interest of the United States in the land and making the contest over it a matter of private interest only. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 23 S. Ct. 692, 47 L. Ed. 1064. Under the Leasing Act the land of the United States is not to be conveyed by patent, but leased, so that the proprietary interest of the United States in the land never ceases. Nevertheless, the lease is the final action of the Land Department in disposing of the land, and in this respect is analogous to a patent. The general powers of the Land Department in administering this law are just such as are exercised in administering other land laws, and exactly the same necessities exist for judicial review of frauds on or in the Department, or mistakes of law, or excesses of the limits of authority, as arose in reference to the grant of patents, and similar remedies ought to apply. Furthermore, since a mere permit to prospect for oil or gas under 30 USCA § 221, is exclusive, and in case of discovery carries the right to take the oil and gas found at a royalty of 20 per cent. until a lease is applied for, section 224, and to lease for twenty years 160 acres, or one-fourth of the land prospected, at a royalty of 5 per cent., with a preference right to lease the whole land at a royalty to be fixed under Regulations, section 223, the permit may be of as much value and importance as the lease which it controls. The permit is itself an act of the Land Department, final so long as it lasts, and though in its inception a mere license conveying no estate in the land, it is a final grant of a valuable right pursuant to law which ought to be secured to the person to whom the law gives it. Judicial inquiry concerning this right cannot be delayed until the permit is executed by the permittee's making the required expenditures, and by his making discovery and obtaining a lease, for it would be most inequitable then to substitute another lessee for the permittee. A just remedy for a wrong award of the permit should be applied prior to the issuance of the permit or promptly thereafter. In deference to the authority of the Land Department, the courts have always refused to interfere until it has exercised its function, or has refused to do so. When that function is to issue a patent, no interference has been allowed until the patent issues. Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Brown v. Hitchcock, 173 U. S. 473, 19 S. Ct. 485, 43 L. Ed. 772; Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 23 S. Ct. 692, 47 L. Ed. 1064; Humbird v. Avery, 195 U. S. 480, 25 S. Ct. 123, 49 L. Ed. 286. We assume that it was for this reason that Hardeman's bill in the Supreme Court of the District of Columbia against the Secretary for an injunction was dismissed. That bill strongly presented the reasons why the remedy it proposed was to be preferred over that here sought, whose difficulties now under discussion were foreseen. That the permit is a perishing thing, unable to outlast a long litigation, is another reason for settling whose it shall be before it issues. But it being apparently established that injunction is unavailable, we think the remedy here sought when invoked without laches is to be allowed. It has been applied to leases and permits under the Leasing Act without question. Isaacs v. De Hon (C. C. A.) 11 F.(2d) 943. In Hodgson v. Federal Oil & Development Co. (C. C. A.) 5 F.(2d) 442, the question was raised that the United States were a necessary party, but it was not decided either by the Circuit Court of Appeals or by the Supreme Court on appeal to it, 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901, 54 A. L. R. 869, both courts dealing only with the merits. It is true that neither lease nor permit ends the interest of the United States in the land involved. If the court were undertaking to dispose of the land to the injury of the United States, they would be an indispensable

party. Louisiana v. Garfield, Secretary, 211 U. S. 70, 29 S. Ct. 31, 53 L. Ed. 92; Goldberg v. Daniels, Secretary, 231 U. S. 218, 34 S. Ct. 84, 58 L. Ed. 191. And in so far as lease and permit are contracts, neither could be canceled or reformed without all parties to them being before the court. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Ribon v. Chicago, R. I. & P. R. Co., 16 Wall. 446, 21 L. Ed. 367; Kendig v. Dean, 97 U. S. 423, 24 L. Ed. 1061; Vincent Oil Co. v. Gulf Refining Co. (C. C. A.) 195 F. 434. But looking at the substance of the matter, we think that the disposition of the land has already been made by the action of the Secretary in issuing a permit on the terms fixed by the law and the regulations. No other or different disposition is now proposed to be made, and no term of the contract is to be altered. A change of permittee is alone to be effected. This would be a most important matter in contracts, permits, or leases where the person to be dealt with could be freely chosen or rejected. But here the law makes the choice, and the question is whether the Secretary by mistaking the law has given the contract to some one other than the one chosen and intended by the United States, speaking through the Congress. The court but succeeds to the Secretary in identifying that choice. The only real interest of the United States lies in having their will as expressed in their laws carried out, and this is not a proprietary interest that will be adversely affected by the transfer proposed.

■ It is again objected that the lease is expressly made unassignable without the consent of the Secretary, 30 USCA § 187, and the permit being a personal license is in its nature nontransferable, but is by Regulation 12½, 47 Land Decisions 437, made assignable to qualified persons, but only on first obtaining the consent of the Secretary. This restriction on transfer applies to voluntary transfers, and will hardly be deemed applicable in case of death, bankruptcy, or court decree. But the difficulty is met by the just assumption that the Secretary intends that leases and permits shall go to those whom the law entitles to them, and when a transfer is ordered to accomplish this his consent is to be implied, and may be compelled if refused. If such a transfer be decreed, he will no doubt, on request, enter his consent thereto, and make necessary substitution of bond, and do all else that is appropriate to perfect the transfer. We therefore affirm the judgment which retained the bill for trial.

■ Upon the merits of the case we think the law is with Witbeck. His application for a permit was filed November 12, 1923, perfect in form and substance, and accompanied by required fees. Hardeman's was filed December 11, 1923. Conceding that he was entitled to preference by having on November 11th gone upon the land and posted notice of his intention to apply, the preference lasted only for the thirty days next following, 30 USCA § 221, and was lost unless a lawful application was filed within that time. The application he filed was not sworn to, and was accompanied with no fees. The fees were paid on demand December 19, 1923, and the oath was offered to be supplied in 1925, long after the thirty days had expired. For lack of oath and fees, the Secretary denied Hardeman the preference. The fees to be paid in connection with an application for a permit were fixed by the special regulations made under 30 USCA § 189, which were known to Hardeman. Payment with the application was not expressly required by them, but was made a condition of filing all applications and declarations by paragraph 8 of Circular 616, 46 Land Decisions 513, of general application in the land office, but unknown to Hardeman. The application was in fact filed, and the filing never expunged, and the fees were paid on notification. We should hesitate to nullify the application on this ground. But the oath to the application was required by the statute itself, 30 USCA § 190, and by the special regulations made under it. Numerous facts were required to be stated in the application, in addition to the important fact of posting the land. An application lacking an oath was no more one in compliance with law than a tax return having such a defect. Lucas v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350, or an unsworn application for a patent, Stewart v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 54 L. Ed. 139. An attachment when required by law to be founded on an oath is void without it. Cohen v. Manco, 28 Ga. 27; Tacoma Grocery Co. v. Draham, 8 Wash. 263, 36 P. 31, 40 Am. St. Rep. 907; 4 Cyc. 470. Hardeman testified at the trial that he did in fact swear to the application at the same time that the affidavit which is mentioned in it as attached, and which showed Hardeman's age and citizenship, was executed by his father. This, if true, occurred at a distance from the land office. The application disclosed no unsigned form of oath, or other indication that its contents were sworn to or

intended to be. By requiring it and all other statements to the Secretary to be upon oath, and in such form and upon such blanks as he may require, we think the statute, section 190, intended written papers and an oath disclosed by the paper filed, so that the Secretary and the interested public could know by inspection whether the requirement had been complied with. No other construction of the statute is practicable, for otherwise there would be intolerable uncertainty, and a penalty for perjury would be hard to inflict for want of knowing who had administered the oath, or whether one had been administered at all. Although ordinarily the omission of an oath can be supplied later, when the oath is made a condition of priority or advantage over another the amendment will operate only from its date. Because Hardeman filed no lawful application within thirty days from his posting of the land, he lost his priority right, and the permit was properly awarded to Witbeck.

█ It was claimed that the award was first made to Hardeman, and that afterwards, without notice to him, it was reconsidered irregularly by the Secretary and reversed. This, it appears, was done in the exercise of the Secretary's supervisory authority, which may be exercised regardless of rules of procedure, and until a patent finally issues. Knight v. United Land Association, 142 U. S. 161, 12 S. Ct. 258, 35 L. Ed. 974; Love v. Flahive, 205 U. S. 195, 27 S. Ct. 486, 51 L. Ed. 768. No new evidence was taken, or argument heard behind Hardeman's back. The reversal of the decision was on questions of law only, and as to these Hardeman stated his position in a motion for rehearing, and the Secretary in ruling on this motion reiterated his conclusions. The question under the present bill is not the regularity of the procedure in the Land Department, but is whether the permit was at last issued to the wrong man through error of law. We think it was not, and the decree to the contrary is reversed, with direction to dismiss the bill.

HUTCHESON, Circuit Judge (concurring).

I concur in so much of the judgment as reverses the judgment appealed from. If the court had a right to consider the case on its merits, I think it plain that it decided it wrongly. The Secretary's award to Witbeck should have been sustained.

I think, however, that the United States not being a party to the suit and not having parted with title to the land, the case presents no justiciable matter and the judgment should dismiss, not remand, the cause.

Witbeck had nothing which the court can make him assign, Hardeman claiming not under but adversely to the Witbeck permit Wilson v. Elk Coal Co. (C. C. A.) 7 F.(2d) 112.

Quite a different situation is presented where, as in the cases cited in the majority opinion in favor of the jurisdiction, Isaacs v. De Hon (C. C. A.) 11 F.(2d) 943, 944; Hodgson v. Federal Oil Co. (C. C. A.) 5 F.(2d) 442, 449, the plaintiff claimed a right in property, title to which was still in the United States, not adversely to but under the defendant, and the object of the suit was to compel him to perform the trust which he had undertaken, to recognize the interest which he had created, or with which he was in privity.

In the Isaacs Case the same court which had decided the Wilson Case makes this very clear. "It is contended that there is a defect of parties, in that the Secretary of the Interior has not been joined. * * * It may be that plaintiffs will lose the fruits of this litigation by the refusal of the Secretary to approve the assignment of interests in the permit. *But appellant is nevertheless held in a court of equity to the obligations he assumed in his grubstake contract.* The Secretary of the Interior would not have been a proper party to this suit. * * * Courts do have power to *enforce contracts with reference to lands* while title thereto is held by the government."

While in the Hodgson Case Judge Stone makes it very plain why there the court had jurisdiction, and here it would not have. "Section 18 [30 USCA § 227] provides that 'all leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him. * * *' The words 'or otherwise' * * * would seem broad enough to cover a claim that the lessor was a trustee. * * * If the appellant is, as he alleges, a tenant in common in such property, the right would exist, if the property were privately owned, in any tenant to exploit it. * * * If the property involved * * * is a part of the public domain * * * and if one of the cotenants has secured this exclusive right to exploitation it would seem that an accounting for the net results would not in any wise affect the lessee or the government. * * * My judgment is that his allegations, if establishing a cotenancy * * * could result only in establishment of a trust relation as

to this lease. If this be true \* \* \* I do not see how the government is interested or affected by this controversy."

Thus it is seen that in the Isaacs and in the Hodgson Cases there was a controversy between persons claiming to be in privity with each other, in which it was sought to establish a trust upon the property in question, not adverse but subordinate to the right held by the defendant.

Here the effort is to strike down wholly the defendant's right in order to set up an independent right asserted in lands the title to which is still in the United States, not in subordination to but wholly in despite of that right, and in contradiction of the action of the Secretary in the exercise of his discretion in awarding the permit to Witbeck.

It seems plain to me that this case presents an attempt to invoke the jurisdiction of the court to, in the absence of indispensable parties, do a vain and idle thing.